Filed 10/29/13, on remand from Supreme Court; pub. order 11/21/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | B240896 |
| | (Los Angeles County Super. Ct. No. CK90652) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.A.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Stephen Marpet, Commissioner.  Reversed.

Catherine C. Czar, under appointment by the court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Timothy M. O'Crowley, Deputy County Counsel, for Plaintiff and Respondent.

_____

J.A. (father) appeals from orders declaring his sons Alexis and Jason dependents of the court and removing them from his custody.  In our initial opinion we concluded the juvenile court applied an incorrect standard in finding father's sons were at substantial risk of being molested by father solely because father molested an unrelated nine-year-old girl.  (Welf. & Inst. Code, § 300, subds. (d) & (j).)[1] (*In re A.A.* (2013) B240896, review granted, opinion vacated and cause remanded (S209511) (*A.A. I*).)  Accordingly, we reversed the jurisdictional and dispositional orders and remanded the cause for a new trial if the Department of Children and Family Services wished to proceed with the matter.  Our Supreme Court granted review of the decision and held the case pending its decision in *In re I.J.* (S204622), which raised a similar issue.  Subsequently the court issued its opinion in *In re I.J.* (2013) 56 Cal.4th 766 holding that:  "[A] father's prolonged and egregious sexual abuse of his own child may provide substantial evidence to support a finding that all his children are juvenile court dependents."  (*Id*. at p. 770.)  The court remanded *A.A. I* to us with directions to "vacate [our] decision and to reconsider the cause in light of *In re I.J.*"  Having done so, we issue this revised opinion in which we reaffirm our reversal of the juvenile court's orders.

## FACTS AND PROCEEDINGS BELOW

When the petition was filed in this case the family consisted of father, his wife (mother), his seven-year-old son Alexis, and his three-year-old son Jason.  In addition, mother babysat An. R., an unrelated nine-year-old girl.  The relationship between the family and An. R. had existed for years, and she considered Alexis and Jason to be like brothers to her.  On several occasions father also exercised caretaker duties as An. R.'s babysitter, and he treated her like his own daughter.

The trial court found jurisdiction over the boys under section 300, subdivisions (b) and (d) based on evidence that on October 27, 2011 and prior occasions going back approximately one year father sexually abused An. R. by rubbing his erect penis against her buttocks, simulating intercourse, grabbing her buttocks, rubbing his penis against her

---

[1] All statutory references are to the Welfare and Institutions Code.

2

vagina, and holding her in his lap against his penis.[2]  Specifically, An. R. testified that on October 27, 2011, while she lay on her stomach on a bed in the living room, father "put his . . . private part [on her] bottom" and "pressured it . . . a bit down and . . . it was moving, like, back and forth."  The contact ended when she moved to her side.  An. R. also testified that father rubbed her back and grabbed her buttocks.  And approximately one year earlier, father "was acting like he was playing" but was actually "holding [her] down," and he rubbed his erect penis against her bottom while holding her shoulders.  In all, An. R. believed these incidents occurred about "five or ten times."  The incidents took place in the family home, some occurring when the boys were present (although they were apparently unaware of the abuse).[3]

The court found jurisdiction over Alexis and Jason under section 300, subdivisions (b) and (d), based solely on its view that "the length and terms of the conduct[]" by father "clearly puts his own children at risk."[4]

## DISCUSSION

The justification the court gave for removing Alexis and Jason from their father's custody and making them dependents of the court was that father's molestation of An. R.

---

[2] In our prior opinion we stated the abuse went back approximately two and a half years.  This appears to have been incorrect.

[3] Father was arrested, but the Los Angeles County District Attorney declined to prosecute, citing a lack of evidence.

[4] Section 300, subdivision (d), states in relevant part that jurisdiction over a child arises when "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused . . . by his or her parent . . . or a member of his or her household, or the parent . . . has failed to adequately protect the child from sexual abuse when the parent . . . knew or reasonably should have known that the child was in danger of sexual abuse."  Subdivision (b) states in relevant part that jurisdiction over a child arises when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

3

constituted sufficient evidence to conclude the boys were at substantial risk of being sexually abused.  We disagree.

In our prior opinion we disregarded the fact that father and An. R. were unrelated because substantial evidence indicated mother and father babysat An. R. for years, the child thought of father's children as her siblings, and father treated her like she was his daughter.  And we agreed with the juvenile court that father's sexual abuse of a young girl over whom he sometimes exercised custodial duties was abhorrent.  But we held the abuse did not constitute sufficient evidence to conclude father's male children were also at risk of sexual abuse.

*In re I.J.* involved a similar situation.  In that case, the father had repeatedly sexually abused his teenage daughter over the course of three years.  (*In re I.J.*, *supra*, 56 Cal.4th at p. 771.)  The abuse included fondling, digital penetration of the child's vagina, oral copulation of the child's vagina, forcing the child to watch pornographic videos with the father, and forcible rape.  (*Ibid.*)  The court agreed with the appellate court's characterization of father's behavior as "'aberrant in the extreme.'"  (*Id*. at p. 778.)  The court noted "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction."  (*Id*. at p. 773.)  Instead, there need only be a "'substantial risk'" of abuse or neglect.  (*Ibid*.)  "'[T]o determine whether a risk is substantial, the court must consider both the likelihood that harm will occur and the magnitude of potential harm.'"  (*Id*. at p. 778.)

"Also relevant to the totality of the circumstances surrounding the sibling abuse is the violation of trust shown by sexually abusing one child while the other children were living in the same home and could easily have learned of or even interrupted the abuse.  '[S]exual or other serious physical abuse of a child by an adult constitutes a fundamental betrayal of the appropriate relationship between the generations. . . .  When a parent abuses his or her own child, . . . the parent also abandons and contravenes the parental role.  Such misparenting is among the specific compelling circumstances which may justify state intervention, including an interruption of parental custody.  (See § 300, subds. (d), (e), (j).)'  [Citation.]"  (*In re I.J.*, *supra*, 56 Cal.4th at p. 778.)  The court found

4

the "serious and prolonged nature" of the father's sexual abuse of his 14-year-old daughter placed the girl's three brothers (12-year-old twins and an 8-year-old) at risk of harm, as defined by section 300, subdivision (j), even though none of the boys was mistreated, and none had witnessed nor been aware of the father's sexual abuse. (*Id.* at p. 771.)

The court cautioned, however, against an overbroad interpretation of its decision: "In upholding the assertion of jurisdiction in this case, we are not holding that the juvenile court is compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused. We merely hold the evidence in this case supports the juvenile court's assertion of jurisdiction." (*In re I.J.*, *supra*, 56 Cal.4th at p. 780.)

And the court cited with approval *In re Jordan R*. (2012) 205 Cal.App.4th 111, 136-139, which affirmed the juvenile court's assertion of jurisdiction over the daughter of a man who sexually abused his teenage niece but also affirmed the court's refusal to assert jurisdiction over the same man's son. (*In re I.J., supra,* at p. 780.) In that case, a father sexually abused his 13-year-old niece by making comments of a sexual nature to her, asking her for a lap dance and oral sex, which she performed, licking her breasts and genitals, and masturbating in front of her. (*In re Jordan R., supra,* 205 Cal.App.4th at p. 136.) The appellate court held this conduct did not compel a finding that the father's toddler son was also at substantial risk of abuse, as nothing in the record suggested the father had inappropriately touched another male in a sexual manner and "abuse of a female child, as aberrant as it is, does not establish, in and of itself, that a male child is at substantial risk of sexual abuse." (*Id*. at p. 138.)

The instant circumstances are distinguishable from those present in *In re I.J.* Father's abuse of An. R. was neither prolonged as that found in *In re I.J.*—one year compared to three years—nor as severe. The sexual abuse of the daughter in *In re I.J.* involved fondling, digital penetration, oral copulation, compelled viewing of pornographic videos, and forcible rape. The alleged abuse of An. R. involved father rubbing his erect penis against her buttocks, simulating intercourse, grabbing her

5

buttocks, rubbing his penis against her vagina, and holding her in his lap against his penis, with no disrobing, penetration, genital contact or use of force. We believe the distinction makes a difference because the fully clothed rubbing of genital areas here was nothing like the abuse committed in *In re I.J.* or even *In re Jordan R.*, and did not, in our view, constitute a fundamental betrayal and abandonment and contravention of the parental role.

*In re I.J.* held "prolonged and egregious sexual abuse" of a female child may provide substantial evidence that male children are also at risk because such abuse constitutes "a fundamental betrayal of the appropriate relationship between the generations" and an abandonment and contravention of the parental role. (*In re I.J.*, *supra*, 56 Cal.4th at p. 778.) As the Supreme Court acknowledged, not all sexual abuse fits this description.

DCFS argues that section 355.1, subdivision (d) constitutes a legislative determination that sexual abuse of a female child puts male children at risk of abuse. That section provides in pertinent part that: "'(d) Where the court finds that either a parent, a guardian, or any other person who resides with . . . a minor who is currently the subject of the petition filed under Section 300 . . . (3) has been found in a prior dependency hearing . . . to have committed an act of sexual abuse, . . . that finding shall be prima facie evidence in any proceeding that the subject minor is a person described by subdivision (a), (b), (c), or (d) of Section 300 and is at substantial risk of abuse or neglect. The prima facie evidence constitutes a presumption affecting the burden of producing evidence.'" (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1347.) DCFS notes that the Supreme Court in *In re I.J.* wrote that section 355.1 was relevant because it "evinces a legislative intent that sexual abuse of someone else, without more, at least *supports* a dependency finding." (*In re I.J.*, *supra*, 56 Cal.4th at p. 779.)

We are mindful of the juvenile court's duty to focus on "ensur[ing] the safety, protection, and physical and emotional well-being of children who are at risk" of sexual abuse. (§ 300.2.) But we do not think the Legislature or Supreme Court would go so far as to say that sexual abuse of one child necessarily constitutes evidence that a child of the

opposite gender is also at substantial risk of being sexually abused.  If that was their intent, the Legislature could easily have incorporated the provisions of section 355.1 into subdivision (d) of section 300, and the opinion in *In re I.J.* would have been one paragraph long and would not have contained the court's dictum that a juvenile court is not "compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused."  (*In re I.J.*, *supra*, 56 Cal.4th at p. 780.)

Because the trial court incorrectly concluded that father's sexual abuse of An. R. by itself constituted substantial evidence that Alexis and Jason were also at risk of being sexually abused, and based its jurisdictional and dispositional orders on only this evidence, the orders are vacated.

## DISPOSITION

The jurisdictional and dispositional orders with respect to Alexis and Jason are reversed.

CHANEY, J.

We concur:

ROTHSCHILD, Acting P. J.

JOHNSON, J.

7

Filed 11/21/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | B240896 |
| | (Los Angeles County Super. Ct. No. CK90652) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Plaintiff and Respondent, | [NO CHANGE IN JUDGMENT] |
| v. | |
| J.A., | |
| Defendant and Appellant. | |

THE COURT:

The opinion filed herein on October 29, 2013 was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.

There is no change in the judgment.

ROTHSCHILD, Acting P. J.          CHANEY, J.          JOHNSON, J.